1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8
9
10
11
12

| | |
|---|---|
| KYLE ANDREW EVERHART,<br><br>                          Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>                          Respondent. | CASE NO. C16-5405 BHS<br>                    CR13-5512BHS<br><br>ORDER DENYING PETITION IN PART, RESERVING RULING IN PART, GRANTING LEAVE TO AMEND, AND APPOINTING COUNSEL |

13   This matter comes before the Court on Kyle Andrew Everhart's ("Petitioner")

14   motion under 28 U.S.C. § 2255 (Dkt. 1), his motion to amend and to appoint counsel

15   (Dkt. 11), and his motion for extension of time to file a supplemental reply brief (Dkt.

16   15). The Court has considered the pleadings filed in support of and in opposition to the

17   motions and the remainder of the file and hereby (1) denies in part and reserves ruling in

18   part on Petitioner's motion under 28 U.S.C. § 2255, (2) grants Petitioner's motion to

19   amend and appoint counsel, and (3) grants Petitioner's motion for an extension.

20                          **I.   PROCEDURAL HISTORY**

21       On September 24, 2014, a jury found Petitioner guilty of Possession of

22   Methamphetamine with Intent to Distribute under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),

and 18 U.S.C. § 2. Cause No. CR13-5512, Dkt. 120. On December 15, 2014, the Court entered judgment in Petitioner's case. *Id.*, Dkt. 139. On December 17, 2014, Petitioner gave notice of appeal. *Id.*, Dkt. 140. On February 11, 2016, the Court of Appeals for the Ninth Circuit affirmed Petitioner's conviction. *Id.*, Dkts. 216, 218.

On May 26, 2016, Petitioner filed his petition under 28 U.S.C. § 2255. Dkt. 1. On May 31, 2016, the Court entered an order requiring the Government to answer. Dkt. 3. On June 14, 2016, the Government requested an extension to answer. Dkt. 5. The Court granted the Government's request, extending the response deadline to July 8, 2016. Dkt. 6. On July 8, 2016, the Government responded. Dkt. 7.

On August 1, 2016, Petitioner filed a reply to the Government's response to his § 2255 petition. Dkt. 10. On August 9, 2016, he moved to appoint counsel and for leave to amend his petition. Dkt. 11. On August 16, 2016, the Government responded to Petitioner's motion for counsel and leave to amend. Dkt. 12.

On September 13, 2016, the Court requested additional briefing on whether Petitioner had selectively waived his *Miranda* and presentment rights prior to being questioned about his involvement with suspected drug trafficking in Washington. Dkt. 13. On September 23, 2016, the Government filed their supplemental brief. Dkt. 14. On October 3, 2016, Petitioner moved to extend to his supplemental briefing deadline. Dkt. 15. On October 5, the Government responded, expressing no opposition to an extension. Dkt. 16. On October 17, 2016, Petitioner filed his supplemental brief. Dkt. 17.

## II.    FACTUAL BACKGROUND

The Government's case against Petitioner was based on Petitioner's confession that he owned two plastic bags of methamphetamine (containing approximately 10,000 pills) that he intended to distribute. Dkt. 1 at 22–23. On April 22, 2014 at approximately 9:00 am, law enforcement arrested Petitioner pursuant to a warrant at a hotel room in the Hampton Inn in Tacoma, Washington. Dkt. 7-1 at 17, 20. Packaged drugs were found in the room. Dkt. 1 at 15–23.

When Petitioner was placed in a police car and informed of his *Miranda* rights, he initially stated that he did not want to talk. Dkt. 7-1 at 27–29. He was then taken to the Pierce County Jail. Dkt. 7-1 at 18, 21. During transport, Petitioner told the officer transporting him that he wished to speak with the case officer on his arrest, Agent Brady, regarding a murder investigation being conducted in Louisiana. Dkt. 7-1 at 18, 30–31. Shortly after 9:30 am, Petitioner arrived at the County Jail. Dkt 7-1 at 18. Petitioner was then transported several blocks to the FBI office in Tacoma to await an interview with Agent Brady. Dkt. 7-1 at 31.

Before the interview, Petitioner was provided a written waiver describing his *Miranda* rights and his right to a timely initial appearance under Fed. R. Crim. P. 5. Dkt. 7-1 at 2–3, 7–10. The waiver included the following language:

> I also understand that, because of my arrest, I have a right under Rule 5, Federal Rules of Criminal Procedure, to be brought before a U.S. Magistrate Judge without undue delay to be advised about the reason for my arrest, to be advised about my constitutional rights, and for consideration of bail issues.
> These rights have been explained to me orally and I have read this form. I understand those rights and wish to waive them for the purpose of

voluntarily cooperating in a Federal investigation into suspected narcotics trafficking. I understand that I can tell the agents, at any time, that I have changed my mind and no longer wish to cooperate and that I will then be provided an appearance before a Magistrate Judge as soon as possible.

*Id.* at 2–3.

The waiver was read aloud to Petitioner by Special Agent Wattree, whereupon Petitioner indicated that he understood his rights and that he was waiving them. *Id.* at 2–3, 7–10. Petitioner then signed the waiver with witnesses present. *Id.* at 7–10. Prior to 2:30 pm, the FBI sent the executed waiver to the U.S. Attorney's Office. *Id.* at 10–11.

Agent Brady arrived at around 2:00 pm, informed Petitioner once again of his *Miranda* rights, and the interview began. *Id.* at 7–11, 25. During the interview, Petitioner stated that the pills discovered at the scene of his arrest belonged to him and that his fingerprints would be found on them. Dkt. 1 at 22–23; Dkt. 7-2 at 8. However, law enforcement could not find his fingerprints on the packaged drugs. Dkt. 7-2 at 4–7.

On April 9, 2014, Petitioner was indicted on three charges for Conspiracy to Distribute Controlled Substances, Possession of Cocaine with Intent to Distribute, and Possession of MDMA with Intent to Distribute. Cause No. CR13-5512, Dkt. 28. The Government later dismissed the initial indictment of Petitioner after learning he had pled guilty to overlapping charges in state court. *Id.*, Dkt. 53. However, on August 13, 2014, Petitioner was again indicted on a count of Possession of Methamphetamine with Intent to Distribute. *Id.*, Dkt. 60.

Prior to trial, Petitioner's counsel moved to suppress the statements made by Petitioner during the interview with Agent Brady. *Id.*, Dkt. 58. On September 2 and 8,

2014, the Court heard oral argument from Petitioner's counsel and the Government on

the motion to suppress. *Id.*, Dkts. 70, 81. At the first hearing, Agent Brady testified that

he recalled Petitioner invoking his right to counsel when he was read his *Miranda* rights.

Dkt. 7-1 at 37–38. At the second hearing, Agent Brady corrected his prior statement,

explaining that Petitioner did not invoke his right to counsel, but rather, only stated that

he did not wish to talk. *Id.* at 21-22. Petitioner's counsel emphasized Agent Brady's

inconsistency on cross-examination. *Id.* at 26–29.

On September 15, 2014, the Court denied Petitioner's motion to suppress. Cause

No. CR13-5512, Dkt. 86. Making its ruling, the Court stated:

> [T]he defendant was transported to the Tacoma FBI office where he was
> again given his *Miranda* rights twice, first by Agent Wattree and then by
> Brady. The defendant acknowledged his rights and signed a written waiver
> and made subsequent statements. In this case the facts before the Court
> demonstrate that it was the defendant that initiated a request to speak to law
> enforcement and he was given, again, his *Miranda* rights and they were
> waived. There is no evidence that the defendant did not understand the
> rights or the meaning and effect of the waiver. There is no evidence that the
> law enforcement officers used any duress, made any threats or made any
> promises to the defendant. The defendant, by signing the waiver, waived
> his right to have an attorney present.
>
> Even though there is a presumption against a waiver, a written
> waiver is strong evidence of a valid waiver. The defendant demonstrated
> sufficient competence and awareness and appeared to understand the
> waiver and its effect. Viewing then the totality of the circumstances, the
> waiver and the statements made were made knowingly, intelligently, and
> voluntarily, and the motion to suppress his statements is denied.

Dkt. 7-1 at 38–39. The Court considered the fact that Agent Brady needed to correct his

initial testimony. *Id.* at 37–38.

1    On September 23, 2014, Petitioner's case proceeded to trial. Cause No. CR13-

2    5512, Dkt. 112. At closing arguments, Petitioner's counsel took particular care to

3    highlight the lack of Petitioner's fingerprints on the drugs. Dkt. 7-2 at 12–13.

4    On September 24, 2014 at 11:20 am, the jury retired to commence deliberations.

5    Cause No. CR13-5512, Dkt. 117. At 11:47 am, the jury sent a note to the Court, asking

6    "Is there documentation of the confession either recorded and/or signed?" and "If there is

7    a record of the confession, may we see it?" *Id.*; Dkt. 7-2 at 15. At 12:45 pm, after

8    conferring with the attorneys for Petitioner and the Government, the Court answered "All

9    the physical documentary evidence that's been admitted into evidence during trial has

10   been made available for you to review and inspect." Dkt. 7-2 at 15–17; Cause No. CR13-

11   5512, Dkt. 117. At 2:55 pm, the jury returned a unanimous guilty verdict. Cause No.

12   CR13-5512, Dkt. 117.

13                        **III.    DISCUSSION**

14   **A.    § 2255 Petition**

15       Pursuant to 28 U.S.C. § 2255 Petitioner moves to vacate, set aside, or correct his

16   sentence. Dkt. 1. Petitioner raises four grounds for relief, all based on ineffective

17   assistance of counsel. "To establish ineffective assistance of counsel 'a defendant must

18   show both deficient performance [by counsel] and prejudice.'" *Premo v. Moore*, 131 S.

19   Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The

20   Supreme Court has explained defendant's burden:

21           To establish deficient performance, a person challenging a
             conviction must show that "counsel's representation fell below an objective
22           standard of reasonableness." [*Strickland v. Washington*, 466 U.S. 668, 688

(1984)]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S. Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To show a trial cannot be relied upon, the likelihood of a different outcome must be "substantial," not merely "conceivable." *Richter*, 131 S. Ct. at 792.

Petitioner organized his petition into four sections or "grounds." First, he argues that counsel failed to have the charges dismissed on the basis that Petitioner's fingerprints were absent from the drug packaging. Dkt. 1 at 5. Second, Petitioner argues that counsel failed to have the case dismissed based on differences between law enforcement reports written the day he was arrested and a subsequent report. *Id.* at 6. Third, Petitioner argues that counsel failed to have his confession to police suppressed under the reasoning of the *McNabb-Mallory* rule. *Id.* at 7. Fourth, Petitioner presents additional various factual arguments that he believes counsel failed to adequately argue. *Id.* at 8–11.

### 1.     Fingerprints

Petitioner first argues ineffective assistance of counsel on the basis that his indictment should have been dismissed because his fingerprints were not found on the drugs. Dkt. 1 at 5. He states:

> "Counsel was ineffective for failure to request dismissal based on the fact that Agents said; that my reindictment was based on the statement 'I told them the drugs were mine and that my finger prints would be all over them;' the Fact is that prosecutors verified that My Finger Prints were NOT on any of the drugs and therefore the second indictment should have been dismissed."

*Id.* To support his position, Petitioner relies on two facts: (1) the investigative reports written prior to his initial indictment lacked information regarding his interview with Agent Brady; and (2) a later report, authored one month prior to his second indictment, discussed the interview. Dkt. 1 at 5, 15–23.

Federal courts may dismiss indictments on two theories. "First, a court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. . . . Second, a district court may draw on its supervisory powers to dismiss an indictment." *United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992), *as amended on denial of reh'g* (Nov. 25, 1992). Under the court's supervisory powers, "[a]bsent such prejudice—that is, absent ''grave' doubt that the decision to indict was free from the substantial influence of [misconduct]'—a dismissal is not warranted." *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

1    Petitioner's argument is unavailing. The absence of Petitioner's fingerprints from

2  the drugs does not implicate any constitutional errors or prosecutorial misconduct. The

3  Government relied upon Petitioner's confession to Agent Brady to obtain a conviction.

4  The Government never argued that Petitioner's fingerprints were found on the drugs. In

5  fact, the Government presented an expert to testify that none of the latent prints found on

6  the drugs matched Petitioner's fingerprints or palm print. Dkt. 7-2 at 4–7. The Court finds

7  no error in counsel's decision not to attack Petitioner's indictment on this basis.

8         **2.     Law Enforcement Reports**

9         Petitioner next argues that counsel "fail[ed] to address the issue of the two

10  different police reports with a total and complete change of the details in the information

11  from the same investigation." Dkt. 1 at 6. To support this argument, Petitioner relies on

12  the same police reports as he did in his first ground for relief.

13         The Court rejects this argument. The reports do not include changed or

14  inconsistent information. While the later report includes details that were not present in

15  the initial reports, this is understandable as the reports discuss different events. The initial

16  reports address the actual arrest of Petitioner while carrying out a warrant arising from

17  narcotics and murder charges in Louisiana. Dkt. 1 at 15–21. The later report addresses

18  Petitioner's subsequent interview with Agent Brady in relation to his possession of

19  narcotics and a weapon at the time of his arrest in Washington. Dkt. 1 at 22–23. The

20  Court finds no error in counsel's decision not to attack the reports.

21

22

1

### 3.    *McNabb-Mallory* Rule

2     Petitioner's third argument is that his "Counsel was ineffective for failure to argue

3 the McNabb Mallory Rule." Under the *Mcnabb-Mallory* rule, as modified by 18 U.S.C. §

4 3501(c):

> [A] district court ... must find whether the defendant confessed within six
> hours of arrest (unless a longer delay was reasonable considering the means
> of transportation and the distance to be traveled to the nearest available
> magistrate). If the confession came within that period, it is admissible,
> subject to the other Rules of Evidence, so long as it was made voluntarily
> and the weight to be given it is left to the jury. If the confession occurred
> before presentment and beyond six hours, however, the court must decide
> whether delaying that long was unreasonable or unnecessary under the
> *McNabb–Mallory* cases, and if it was, the confession is to be suppressed.

*United States v. Valenzuela-Espinoza*, 697 F.3d 742, 749 (9th Cir. 2012) (quoting *Corley

v. United States*, 556 U.S. 303, 322 (2009)). *See also* Fed. R. Crim. P. 5(a); 18 U.S.C. §

3501(c). A defendant may waive his or her presentment rights. *United States v. Binder*,

769 F.2d 595, 599 (9th Cir. 1985), *overruled on other grounds by United States v.

Morales*, 108 F.3d 1031 (9th Cir. 1997). ("A waiver of *Miranda* rights constitutes a

waiver of the rights under Rule 5.").

     Petitioner executed a waiver and made his statements within the six-hour statutory

safe harbor of 18 U.S.C. § 3501(c). Petitioner was arrested at approximately 9:00 am.

Dkt. 7-1 at 17, 20. He expressed a desire to speak with Agent Brady at approximately

9:40 am. *Id.* at 18, 30–31. Sometime between 1:00 pm and 2:30 pm, Petitioner executed

the waiver of his rights. *Id.* at 7–11, 25. At the very latest, Petitioner's waiver and

confession were offered only five hours and thirty minutes subsequent to his arrest.

Petitioner also argues that his waiver of timely presentment was selective and that it applied only to charges implicated by the Louisiana murder investigation. However, the Court can find no precedent justifying the application of a selective waiver theory to the protections of Federal Rule of Criminal Procedure 5, 18 U.S.C. § 3501(c), and the *McNabb-Mallory* rule. While selective waiver is practicable in the context of *Miranda* rights, *see United States v. Soliz*, 129 F.3d 499 (9th Cir. 1997), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001), it would be illogical and unworkable if a defendant could waive his right to timely presentment on some charges while simultaneously demanding immediate presentment on others. Because Petitioner's confession and waiver were offered within the statutory safe harbor, the Court finds no error in counsel's decision not to raise this argument.

**4.      Counsel's Presentation of Various Arguments**

Petitioner also asserts that counsel failed to present nine arguments at trial or to otherwise use them to obtain a dismissal. These arguments are addressed below.

**a.      Number One: Jury Instruction**

Petitioner argues that counsel should have opposed the Court's response to a question asked by the jury during deliberations. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *United States v. Frega*, 179 F.3d 793, 809 (9th Cir. 1999) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946)). However, "[a] defendant seeking § 2255 relief on the basis of a faulty jury instruction can establish actual prejudice only by demonstrating that the erroneous instruction so infected the entire trial that the resulting conviction violates due

1   process." *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) (internal

2   quotation and citations omitted). "[T]his is also the appropriate standard for determining

3   actual prejudice where a defendant seeks § 2255 relief on the basis of a court's response

4   to questions by the jury." *Id*.

5       Shortly after the jury retired to commence deliberations, it sent a note to the Court

6   asking, "Is there documentation of the confession either recorded and/or signed?" and "If

7   there is a record of the confession, may we see it?" Dkt. 7-2 at 15; Cause No. CR13-

8   5512, Dkt 117. After hearing both the Government and Petitioner's counsel on the matter,

9   the Court declined a proposed instruction from the Government and instead returned an

10  instruction as approved by Petitioner's counsel. Dkt. 7-2 at 15–17. The instruction stated:

11  "All the physical documentary evidence that's been admitted into evidence during trial

12  has been made available for you to review and inspect." *Id.*; Cause No. CR13-5512, Dkt.

13  117. After receiving the instruction, the jury returned a unanimous guilty verdict. Cause

14  No. CR13-5512, Dkt. 117.

15      Petitioner contends that the Court's instruction was error, because it "answered the

16  jury by saying you must go off the Agent testimony." Dkt. 1 at 8. The Court disagrees.

17  The nature of the jury's questions indicates that they were aware there was no recording

18  of the interview or signed confession at trial. The Court's answer appropriately instructed

19  the jury that all the evidence presented by the Government had already been provided. It

20  did so without suggesting the existence of inculpatory evidence not presented. It also

21  avoided suggesting that the jury could not consider an absence of evidence as

22  exculpatory. Never did the Court tell the jury it must rely on Agent Brady's testimony.

1   The Court finds no error in the instruction. Even if the Court's instruction was less than

2   satisfactory, there is no indication that it "so infected the entire trial that the resulting

3   conviction violates due process." *Dunham*, 767 F.2d at 139.

4                    **b.      Number Two: Credibility of Agent Brady**

5           Petitioner argues that his "Counsel failed to mentioned that Agent Brady was

6   found lying on Search Warrant affidavit." Dkt. 1 at 8. Petitioner's argument refers to

7   inaccurate information in the affidavit signed by Agent Brady whereby law enforcement

8   obtained a warrant to search the hotel room where Petitioner was staying.  *See* Dkt. 7-1 at

9   43–44. The inaccuracies to which Petitioner refers include (1) a statement that the drugs

10  were initially found during a sweep; and (2) a statement that Petitioner had given law

11  enforcement information regarding "76 pounds of marijuana."

12          Petitioner's argument fails to overcome "the strong presumption that counsel's

13  conduct falls within the wide range of reasonable professional assistance." *Strickland*,

14  466 U.S. at 689. Counsel attacked the inaccurate information in the search warrant in an

15  attempt to suppress evidence prior to trial. *Id.* Petitioner's motion to suppress was denied.

16  *Id.* The Court finds that Petitioner's argument raises no error.

17          Counsel was not ineffective when he chose not to raise this issue at trial. An

18  argument that the affidavit was inaccurate because it referred to a "sweep" of the hotel

19  room, as opposed to an invited entrance, would have made little impact on the credibility

20  of Agent Brady. The potential prejudice against Petitioner that would have resulted from

21  admitting into evidence an inaccurate statement tying him to 76 pounds of marijuana

22  would far outweigh the minimal impact such a statement might have on Agent Brady's

credibility. In its ruling on Petitioner's suppression motion, the Court has already stated, "while there was some carelessness here, there was no evidence (or motive for that matter) of Agent Brady intentionally misleading the issuing magistrate, nor was his providing inaccurate information done in reckless disregard for the truth . . . the warrant was executed in good faith." *Id.*

Contrary to Petitioner's assertion, counsel raised this issue in a suppression motion. Counsel's decision not to present this issue to the jury was not ineffective assistance of counsel.

### c.    Numbers Three and Four: Fingerprints

Petitioner once again argues that he should not have been convicted because his fingerprints were not found on the drugs, nor the "bag sealing machine." Dkt. 1 at 9. However, Petitioner's counsel placed great emphasis on this argument in his closing statement. *See* Dkt. 7-2 at 12–14. A claim for ineffective assistance of counsel does not arise merely from counsel's argument not prevailing. "The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697. The Court finds no error or constitutional deficiency in counsel's manner of pursuing of this argument.

### d.    Number Five: Hotel Registration

Petitioner also argues that counsel failed to argue that he "was not listed on the Hotel Room [where the drugs were found and he was arrested] nor was it Registered to me." Dkt. 1 at 9. He explains that this showed the Government "lacked of evidence . . .

1  that would make [him] owner of the pills in a Hotel Room that was not his room and his

2  finger prints were not on the pills." *Id.*

3      However, counsel did argue that the room was in the name of Craig Everhart, not

4  Petitioner, and that "[t]here is nothing that connects [Petitioner], Kyle Everhart, with the

5  room except for his ID." Dkt. 7-2 at 14. Also, even if counsel had not made this

6  argument, it is unlikely that it would have prejudiced Petitioner. Petitioner's physical

7  access to the hotel room was established. He was arrested in the hotel room where the

8  drugs were present. The room was registered to a relative with the same last name. His

9  girlfriend and children were present in the room when he was arrested. Most damning,

10  Petitioner confessed to ownership of the drugs. The Court finds no error.

11          e.       **Number Six: Obtaining Affidavits Prior to Testimony**

12      Petitioner next appears to challenge the effectiveness of his representation based

13  on counsel's failure to obtain sworn affidavits from agents prior to either the suppression

14  hearing or trial. *See* Dkt. 1 at 9 ("Counsel was ineffective for failure to have agents

15  submit a sworn statement of their original statement before hearing other testimonies and

16  recantering their statements the next day."). He claims this would have prevented agents

17  from changing their testimony to conform to that of other agents. *Id.*

18      It was not counsel's duty to ensure that the Government's witnesses testified

19  truthfully. Petitioner fails to cite, and the Court is unaware of, any authority suggesting

20  that defense counsel renders ineffective assistance if he fails to seek affidavits from law

21  enforcement officers prior to their in-court testimony. Furthermore, it is mere speculation

22  that such affidavits would be obtainable if sought. Rather, a witness's responsibility to

testify truthfully is codified in law. "A false statement made during in-court testimony constitutes perjury." *United States v. Bonds*, 784 F.3d 582, 592 (9th Cir. 2015) (citing 18 U.S.C. §§ 1621, 1623). Additionally, Petitioner's claim cannot be sustained under a theory of failure to investigate. Although Petitioner complains that his counsel did not use sworn affidavits to cross-examine the Government's witnesses, he does not allege that counsel was unaware of that to which the Government's witnesses would testify. Nor does Petitioner present any facts to raise concerns that counsel was unprepared for cross-examination. The transcript of the suppression hearing indicates significant preparation.

Petitioner fails to present a substantial claim that overcomes the presumption that counsel provided effective assistance of counsel on this issue. The Court finds no error.

### f.    Number Seven: Voluntary vs. Selective Waiver

Petitioner next claims that "Counsel was ineffective for failure to push the facts that there were never any waiver or right to reinitate [sic] contact nor to talk about the pills nor anything *about the case in Washington*." Dkt. 1 at 10 (emphasis added). Also, in his reply, Petitioner argues that he "informed Agent Brady repeatedly that [he] was only willing to only discuss the [Louisiana] murder and nothing else and [Agent Brady] assured [him] that was what the waiver was for." Dkt. 10 at 5. This argument raises concerns regarding the voluntariness and validity of Petitioner's waiver of his Fifth Amendment rights.

Generally, "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Colorado v. Spring*,

479 U.S. 564, 577 (1987). "However, the authorities must 'scrupulously honor' the

suspect's right to cut off questioning." *United States v. Soliz*, 129 F.3d 499, 504 (9th Cir.

1997), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir.

2001) (quoting *United States v. Lopez–Diaz*, 630 F.2d 661, 664 (9th Cir.1980)). The

Ninth Circuit has found that:

> [A] suspect may selectively waive his right to remain silent in one of two
> ways. He may either tell the police that he will not discuss certain subjects,
> or the suspect may . . . inform the police that he is willing to discuss only
> specific subjects. Both approaches effectuate *Miranda*'s requirement that a
> suspect in custody have the right to remain silent or, at his discretion, to
> limit questioning.

*United States v. Soliz*, 129 F.3d 499, 504 (9th Cir. 1997) (internal citations omitted). *See
also United States v. Ho*, 232 F.3d 897 (9th Cir. 2000); *United States v. Lopez-Diaz*, 630
F.2d 661, 664 (9th Cir. 1980); *United States v. Lorenzo*, 570 F.2d 294, 297–98 (9th Cir.
1978) ("It is also clear that a suspect may, if he chooses, selectively waive his Fifth
Amendment rights by indicating that he will respond to some questions, but not to
others."). *But see United States v. Farley*, 607 F.3d 1294, 1329–30 (11th Cir. 2010).

The Ninth Circuit has also recognized

> a critical distinction between . . . an inquiry for the limited purpose of
> clarifying whether the defendant is invoking his right to remain silent or has
> changed his mind regarding an earlier assertion of the right and, on the
> other hand, questioning aimed at eliciting incriminating statements
> concerning the very subject on which the defendant has invoked his right.

*United States v. Lopez-Diaz*, 630 F.2d 661, 665 (9th Cir. 1980).

Petitioner's argument that he repeatedly stated a desire to limit his interview to

details about the Louisiana homicide investigation implicates the Ninth Circuit's *Lopez-*

1   *Diaz* and *Soliz* line of decisions. There was a two-day hearing on Petitioner's motion to

2   suppress, at which counsel argued that Agent Brady's interview of Petitioner was

3   unlawful. Dkt. 7-1 at 32–44; Cause No. CR13-5512, Dkts. 70, 81. Specifically, counsel

4   argued there was not a valid waiver of Petitioner's *Miranda* rights because Petitioner had

5   allegedly already requested an attorney. The Court found otherwise. Dkt. 7-2 at 38–39

6   ("[I]t was the defendant that initiated a request to speak to law enforcement and he was

7   given, again, his *Miranda* rights and they were waived."). However, counsel did not

8   argue that Petitioner had invoked his right to remain silent about the Washington drug

9   trafficking investigation through a selective waiver.

10      Petitioner now asserts that his waiver was selective and that Agent Brady's

11   questions about the Washington narcotics trafficking investigation, which resulted in

12   Petitioner's confession, violated Petitioner's right to limit the scope of his waiver.

13   Factually, Petitioner's argument is strengthened by several aspects of the record. First,

14   the Court notes its own recorded observation that Petitioner "told [the officer transporting

15   him to Pierce County Jail] that he wanted to talk about the homicide investigation in

16   Louisiana." Dkt. 7-1 at 38.[1] Next, the Court notes Agent Brady's acknowledgment that

17   the officer transporting Petitioner to jail informed him that Petitioner wanted to speak

18   specifically about the Louisiana homicide investigation. Dkt. 7-1 at 24 ("Mr. Everhart

19   wanted to talk to me about the incident in Louisiana."). Other details in the record further

20   support Petitioner's argument, including: (1) the testimony of the officer transporting

21   _____

22      [1] The Court has made no finding whether or not Petitioner requested to speak to Agent
Brady *only* about the Louisiana homicide investigation.

Petitioner, observing that Petitioner wanted to talk about the Louisiana murder investigation, Dkt. 7-1 at 18; (2) Petitioner's repeated assertions that he asked to limit the interview to the Louisiana murder investigation and that Agent Brady confirmed that was the scope of his waiver, Dkt. 17 at 4, Dkt. 10 at 5; and (3) the fact that the interview was bifurcated into two distinct sections, the first dealing with the Louisiana homicide investigation, and the second dealing with the Washington narcotics trafficking investigation, Dkt. 14-1 at 15.

The Government argues that the written waiver states it was "for the purpose of voluntarily cooperating in a federal investigation into suspected narcotics trafficking." Dkt. 14 at 1; Dkt. 7-1 at 2. This is strong evidence that Petitioner voluntarily waived his Fifth Amendment rights regarding the narcotics investigation. However, if Petitioner's assertions are true, placing such language in a printed waiver may, after viewing the totality of the circumstances, be insufficient to overcome concurrent and repeated oral assurances by law enforcement that any waiver would be limited to the Louisiana homicide investigation.

The Court finds that important questions of fact must be answered before the Court can decide this issue. The Court needs a more detailed understanding of the statements and events surrounding the reading and signing of the waiver and the subsequent interview.  Therefore, the Court reserves ruling on this issue.

g.      **Number Eight: Law Enforcement Reports**

Petitioner again asserts error in counsel's failure to attack the law enforcement reports based on their dates of authorship and the fact that they describe different events.

1   Dkt. 1 at 10. His argument here is identical to his second stated ground. The Court finds

2   no error.

3                   h.      **Number Nine: Cross-Examination of Agent Brady**

4           Petitioner's final argument is that "Counsel was Ineffective for failure to better

5   Cross examine Agent Brady for changing his testimony" on the second day of the

6   suppression hearing. Dkt. 1 at 11.

7           On the first day of Petitioner's suppression hearing, Agent Brady testified that

8   Petitioner invoked his right to counsel when he was escorted from the hotel room and

9   received his *Miranda* rights. Dkt. 11 at 4; Dkt. 7-1 at 37. However, on the second day,

10  Agent Brady corrected his prior testimony and stated that Petitioner had only expressed

11  that he did not wish to talk. *Id.* at 21-22. Counsel thoroughly cross-examined Agent

12  Brady, placing great emphasis on the fact that Agent Brady needed to correct his earlier

13  testimony. Dkt 7-1 at 26–29.

14          Counsel's strong emphasis on Agent Brady's need to correct prior testimony is

15  reflected in the Court's ruling:

16              While Officer Brady in the first hearing testified that the defendant
                invoked his right to counsel, in the second hearing he changed his
17              testimony and said that he had been mistaken in his earlier testimony and
                that the audio portion of the video recording taken in the patrol car is
18              accurate, that the defendant in fact, when given his *Miranda* rights and
                asked if he wanted to speak, answered that he did not. The video confirms
19              this testimony, and there is no evidence from any witness that the *Miranda*
                rights were given to the defendant at any time prior to the ones given in the
20              patrol car or that there was any request for legal counsel before that time.
                Indeed, in his earlier testimony he said that the request for an attorney came
21              after Hamilton advised defendant of his rights and after he answered "no"
                to the question of whether he wanted to talk. Hamilton testified that
22              defendant did not ask for an attorney after the defendant said he did not

ORDER - 20

1    want to talk. Brady's first recollection of the request coming right after
2    defendant declined to talk (and not at some time earlier as argued by the
     defendant) is compelling evidence that Brady had simply misremembered
     when he testified at the first hearing.

3          Even if the Court were to find that the earlier Brady testimony was
4    to be believed over his later testimony, law enforcement was not under any
     obligation to immediately provide the defendant with an attorney. It only
     had an obligation to not question him without an attorney present.

5    *Id.* at 37–38. Noting the mistake in Agent Brady's initial testimony, the Court nonetheless

6    denied Petitioner's motion. *Id.* at 39.

7          Contrary to Petitioner's assertion, counsel adequately cross-examined Agent

8    Brady regarding the change in his testimony. Even if he had not, the Court ultimately

9    determined that law enforcement had no obligation to immediately provide an attorney

10   and that Petitioner's subsequent statements were self-initiated. *Id.* at 38–39. The Court

11   finds no error.

12         **5.    Prejudice**

13         In the majority of the issues discussed above, even had counsel's performance

14   fallen below the reasonable standard of conduct, Petitioner has failed to show he was

15   prejudiced. The Government's case, based on Petitioner's confession, was strong. The

16   only issue wherein Petitioner may be able to show prejudice is the contention that his

17   *Miranda* waiver was selective and that his confession was therefore inadmissible. The

18   Court has reserved ruling on that issue. Otherwise, none of Petitioner's contentions, even

19   if true, show a "reasonable probability [of error] . . . sufficient to undermine confidence

20   in the outcome." *Strickland*, 466 U.S. at 694. While a different outcome is tenuously

21   conceivable had counsel approached the trial differently, the likelihood of such an

22

outcome is not substantial. *Richter*, 131 S. Ct. at 792. Therefore, except for the issue of selective waiver, upon which the Court reserves ruling, Petitioner has failed to show actual prejudice. The parties will address whether Petitioner can show prejudice on the issue of selective waiver after counsel is appointed and the petition is amended.

**B.    Motion for Extension**

Petitioner moved to extend his deadline to file supplemental briefing. Dkt. 15. Although the Government timely filed and served its supplemental brief, it does not oppose the motion. Dkt. 16. The motion is granted.

**C.    Motion for Leave to Amend and to Appoint Counsel**

Petitioner seeks to amend his petition as a matter of course, or in the alternative, seeks leave of the Court to do so. Dkt. 11. Petitioner may not amend as a matter of course as, when he filed his motion, over 21 days had passed since the Government responded to his petition. Fed. R. Civ. P. 15(a)(1). However, Petitioner has raised factual and legal issues that would benefit from further development; namely, whether his *Miranda* waiver at the time of his interview was selective and whether his counsel was ineffective in failing to argue for suppression on a theory of selective waiver. Pursuant to Fed. R. Civ. P. 15(a)(2), the Court grants Petitioner leave to amend his § 2255 motion regarding this issue.

Petitioner also moves to appoint counsel. Dkt. 11. Title 28 U.S.C. § 2255(g) provides that the Court may appoint counsel for Petitioner under 18 U.S.C. § 3006A(a)(2)(B). Moreover, Rule 6(a) of the Rules for Section 2255 proceedings, provides that the Court *must* appoint an attorney for a moving party "who qualifies to

1  have counsel appointed" and "[i]f necessary for effective discovery." The Court has

2  determined there are important questions of fact about the circumstances surrounding

3  Petitioner's *Miranda* waiver. Also, by arguing ineffective assistance of counsel, there will

4  likely be necessary discovery regarding privileged communications between Petitioner

5  and his trial counsel. *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003). The

6  motion to appoint counsel is granted.

7                                              **IV.   ORDER**

8          Therefore, it is hereby **ORDERED** that Petitioner's motion under 28 U.S.C. §

9  2255 (Dkt. 1) is **DENIED in part** and ruling is **RESERVED in part** as stated herein.

10  Petitioner's motion for extension is **GRANTED**. Dkt. 15. Petitioner's motion for leave to

11  amend and to appoint counsel (Dkt. 11) is **GRANTED**. The parties shall work with the

12  Clerk to schedule further proceedings.

13          Dated this 1st day of November, 2016.

14

15  _____

16  BENJAMIN H. SETTLE
    United States District Judge

17

18

19

20

21

22

ORDER - 23